Council has two cases to consider this morning. The first is Kemp v. Superintendent, appellate number 21-3165. Before we start the argument, I think my panel mates and I would all agree we would have preferred to be with you in person, but because of the ambiguity at the end of last week, we were concerned about council incurring unnecessary expenses and unpredictable changes. And so it's for that reason and that reason alone, we are not with you in person, but we look forward to seeing you in future cases live in the courtroom, either in Pittsburgh, Philadelphia or elsewhere. So with that in mind, we'll hear from council or the appellant, counsel to your parents and we'll hear from you. Morning, your honors. I may have pleased the court. My name is John Vadle. I'm here representing the appellant, William Kemp. If I may, I'd like to reserve three minutes for rebuttal be granted. I'd like to frame our discussion today by borrowing a line from Mr Wade's brief that there were two essential questions before the jury. In this case, there was how did the shooting occur? And then there was why did the shooting occur? This appeal is focused on the why and the why is about whether Mr Kemp acted in self defense and the prosecution's efforts to use what he was not saying to the police, his decisions to remain silent to not only discredit his self defense claim, but also as indicative of his guilt. Now, the overarching question here is one of procedural default and procedural default is excusable as this court is aware, if post conviction counsel is ineffective under the Strickland standard, you agree that default happened, correct? Yes, we would definitely agree that this claim was not raised. Uh, although Mr Kemp tried to raise it in his pro se petition when he was appointed counsel, the amended petition removed this. Uh, so, yeah, we would agree that I'm sorry. Go ahead. So in order to excuse the default, you have to show there's some merit in the Doyle violations or put differently. Council's failure to object to the purported Doyle violations, correct? Correct. Would you agree that the only two potential Doyle violations are really, um, this prosecutor's closing statement and maybe some of the jury instructions? I think individually, um, the questions to the officer and the questions to Mr Kemp are, um, not particularly strong. If they're gonna be doing violations, I think that they especially the question to the attorney about the attorney. I think if it were limited the way the court wanted to be limited, that would have been fair game. So I would agree that the two most glaring issues, um, would be the instructions to the jury that did not touch on what the jury could do, if anything, with Mr Kemp's silence and also the prosecution's comments that kind of tied together all these questions as as illustrative of his consciousness of guilt. What about his cross? What about his cross examination? Uh, so I think you're referring to the question about why he ended the interview with the police. Um, I think that there was some opening of the door. As Mr Wade has mentioned, I think that there's definitely that is true. Um, there was some testimony that he ended his interview with the police because he was taking morphine. Um, and the court allowed a question about to clarify that he ended the interview actually because he was requesting a lawyer if it had been limited to just that, you know, as the court gave the immediate curative instruction that you know that there were two aspects there. There was the request and then there was also the decision to remain silent and that the request for a lawyer could be used as for limited to impeachment to impeach the prior testimony that he ended the interview because he was on morphine. But the court then also said to the jury, there's a second aspect as to his decision to remain silent, but I never explained anything about that to the to the jury. Uh, and then and trial counsel never asked for any kind of clarification on that either. So I think that if it had been limited to just that, I think that's probably within bounds, but it wasn't limited to that. And that became clear in the closing argument when, you know, prosecution walks through the questions to the officer about, you know, these non answers that Mr Kemp was giving. And then the fact that he decided when he was being pressed on those questions, his decision to request a lawyer and the interview that that was consciousness of guilt. And I think that's where it really goes far beyond the bounds and gets into a little violation because at that point it's no longer just about, uh, using his request for a lawyer to impeach earlier statement that was inconsistent. It was much more about his decision to remain silent here. It's indicative of his guilt. Let's assume that, um, we were to agree with you that there was a Doyle violation by virtue of the statements you're referring to in the prosecutor's closing and the jury instructions and counsel company council would have recognized that and objected. How do you show there was prejudice in light of the number of witnesses who, while they may have had some differences in detail, all seem to agree that there was an opportunity to retreat. Those aren't their words, but that does seem to be the story that they have presented from their recollections. So how do you get over prejudice? I think the, the issue with prejudice is we would agree that there was, there's a lot of evidence in this question. This really gets to the, the how and the why the two different questions. There was a lot of evidence in this case as to the how, but there really wasn't that much about the why. Um, and so Mr. Kim's credibility is his testimony and whether or not the jury would believe him when he said that he felt like his life was in danger was critically important, uh, in this, in this question of why and, and the use of his silence, the use of his request for a lawyer and to remain silent to discredit that and not just as credited, but infer that he did so because he knew he was guilty is prejudicial. This is what the court talked about and you and us versus Lopez where, you know, when the, when the defendant's testimony is, is, and his credibility is a paramount importance using silence, a doyle violation that goes to that aspect of the case is prejudicial, but isn't Lopez different because in, in the case involving Mr. Kim, there were a number of neutral witnesses, neighbors, where in Lopez, it was really the you agree that that is a vastly different scenario than this one. I would agree it's definitely not exactly on point for sure, but I think the principle of Lopez still applies here. Um, and I think this is, if you look at the scene case, for instance, where I understand that the court in that case, you know, found it was not prejudice, but one of the things the court mentioned was, uh, you know, had, had Mr. Kemp's or had the Mr. Haseen's testimony been a strong counter to this mountain of evidence that they had, they still would have found no problem, you know, ruling that the doyle violation was prejudicial. And I think in a case like this, you know, like I said, there was definitely evidence as to how, but there just was not a lot of evidence as to why. And when you're talking about, you know, the why question being his mental state and whether he believed his life was in danger. And if he did, whether that was reasonable, um, you know, his testimony as to his belief is certainly going to be very important, but how do you overcome the jury had in front of it, the fact that he went to his car, opened the door, grabbed the gun, turn and discharge the weapon when he could have continued, gotten the car and left. Now, I know he testified that he didn't do that. Maybe he didn't know where his keys were. Then there was another bit of testimony that he was concerned that, you know, why would he do that? Because he could have been shot out by one of the other people, although there was no evidence, any of them had guns. Um, so it's really the duty of to retreat that I'm focused on. Okay. Yeah. And it's definitely true. And I think that there's, you know, that is a complication in the testimony in the case. Um, you know, I think that, you know, the issue was when you're talking about a situation where, you know, he testified that he heard the word gun and he thought that, you know, he may be, you know, potentially be shot from somebody coming up behind him. Um, you know, I think there's a range of things that you can do in that moment. Um, you know, and I think that, you know, his testimony about, um, you know, feeling like that was his option, feeling like his only option here was, as he said, this was mortal combat. Um, that his option was, you know, if he doesn't turn around and defend himself, he's gonna, he's gonna die. Yeah, I understand that. I understand that your your argument based on what Mr Camp had testified to. But let's take a look. Let's take a moment at the language of Strickland and cases thereafter. It says to establish prejudice in Strickland, the defendant must show there was a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. And then, uh, in Harrington versus Richter 2011, uh, Harrington courts, the likelihood of a jury result must be substantial, not conceivable. So, uh, where are you on that spectrum? Uh, you need more than conceivable. How, what's your best argument that, uh, this I think when there's a lot of conflicting evidence and and the prosecution is explicitly using his quote non answers to police and his decision to remain silent when he requested a lawyer explicitly tying that to his consciousness of guilt that this is indicative of his guilt and that to happen without challenge and without further instruction from the court. I think when you're trying to, if you're a jury member and you're trying to weigh some conflicting evidence and what you have heard and what you have in your mind is, well, if he were, if he, if he actually acted in self defense, why did he say something? I think that can tilt you toward finding guilt based on the fact that he was not saying certain things to the police or based on the fact that he decided to remain silent and ask for a lawyer. I think that's possible. The council, that's possibility of prejudice. That's not actual and substantial disadvantage, which is what strict when prejudice requires. So I take judge Fisher's point to mean sure, there's possibility that a reasonable juror might have waived this testimony book, but why is it showing that it actually occurred? It seems that the record is quite clear that Mr Kemp's stance was well before the jury. They understood what it was that they were being asked to decide. And these scattered sentences that come in at the one time with the court's instruction and the other three words in the closing statement, is that enough understripping to show prejudice? I think that circumstances, but I think there's also important to remember that, you know, the overarching question that we have here today is one of procedural default, you know, and whether post conviction council, uh, was ineffective under strictly, which is a little bit more looser standard than will be applied necessarily to the trial council and to overcome procedural default, um, doesn't necessarily require a complete showing that the underlying claim has merit, but that there is some merit to it. Yeah, I think, I think you're right on that. Uh, but, uh, you may be mixing up the questions because there are two separate questions that substantiality to support procedural default may be different than the substantiality under Harrington B. Richter to prove an effective assistance of counsel. So, uh, suppose we agree with you that there was, there was cause to excuse the procedural default in this case. Okay. Uh, that would be a different conclusion than what the district court made here. If we agree with you, should we decide the ineffective assistance of counsel? Are you asking us to decide the ineffective assistance of counsel claim ourselves or to determine whether or not there was prejudice here? Uh, should this be sent back to the district court for, uh, more evident an opportunity to us to put on the record some evident evidentiary support? Yeah. And I think maybe our brief created some confusion on it. We, we didn't want to not ask for the court to grant habeas relief, but realistically speaking, I think the more appropriate strategy is, um, you know, if the court is inclined to agree that there was default to, or that the default could be excused would be to remand it so that the district court could address this on the merits and look into these questions of prejudice more, more deeply. So ultimately we're asking What would a hearing do though on, I mean, structure that hearing for us. I mean, why are you going to, what, what is a hearing going to add to what we have in the record on the question of prejudice? Let's assume that we agree with you that there was deficient performance because I think the prong one to excuse and the prong one on ineffective assistance of counsel are virtually identical, whereas substantiality and prejudice might be slightly different. What, what's a hearing going to produce and assume for the purpose of that question that such hearings now take place post some of the Supreme Court precedent that questions how much independent evidentiary findings of court can make. So go with judge judge Fisher's hypothetical. Sure. I'm just want to make sure I understand. Are you asking what will a hearing prove on for the prejudice purpose? Yes. What, what goods is going to be in, you know, in simple terms? Um, well, it's a good question and it may be that it doesn't add a whole lot. I mean, truthfully, um, I think that, you know, it would be very helpful to, to get the perspective of, you know, the, the trial counsel in this, in this case. Um, but, but it's true, you know, when it comes to determining prejudice, it is going to simply, you know, primarily be based on unlikely the record. Um, you know, if there's already sort of under, if we're assuming for, for these purposes, that it's already a given that trial counsel was, wasn't effective and it's just about prejudice, um, then a hearing may not offer much. I can certainly conceive that. Judge maybe. Yeah. Counsel, but sort of on that point too, uh, I know you disagree with whether it's properly before us, but let's assume we think harmless error is something that we need to consider. Why, why isn't all of this assumed under the harmless error doctrine? I think it's basically our, our perspective as to, you know, the importance of Mr. Kemp's testimony and the importance of, um, his credibility and the fact that his silence was being used to directly attack that. Um, I think the case law indicates that that is pretty visual. And I think that it would be something that would fall outside the realm of harmless error for the purposes though, of, of our analysis. Um, isn't prejudice and harmless error evaluated under the same prism pursuant to breath and strickling? Like, aren't they the same? I believe that they are. Yeah, I believe they are. Thank you. Any, uh, judge fish, you have any further questions of council that maybe I'll take further. Okay, great. Council. I'll be back on the bottle. Mr Wade. Good morning, judges. My name is Martin Wade. I'm an assistant district attorney in Lycoming County. I represent the appellees. I guess I've taken over for the superintendent. Uh, given that we prosecuted the case here in Lycoming County, I was a newly minted prosecutor when this case went to trial. And I distinctly remember the disappointment on my boss's face when it came back third degree. Um, and, and, and the reason for that, I think, is, um, there was some facts right up front in front of the jury that we're going to be difficult for Mr Kemp to overcome, namely the location of the gunshot wounds, one to the back of the head. They were contact near contact. Typically, a gunshot wound to the back of the head is not something that the with a self defense shooting. And why is that, Council? I'm not sure what the relevance of any of this is. But why is why is that the case? The location of the injury, um, is not one that you typically see in mortal combat. It's more consistent with an attack. My understanding was the record didn't show that Mr Kemp had made repeated discharges in a pursuit back to the house, Mr. Kemp fired, as I understood the record, rapidly twice in close quarters. I guess I'm just failing to see how that couldn't reasonably have been considered by the jury as consistent with self defense. But as I said, I'm not sure how this factors into your larger argument. So I'll let you continue. Just the fact that there were two shots, both vital regions of the human body and that jury instruction that's given about inferring malice from that alone. And the fact that Mr. Kemp had left a volatile situation, essentially escaped from it to safety and then returned to that situation with a firearm right up front, there was pretty significant evidence of premeditation. It was going to be difficult for him to overcome. And so I think certainly the court's analysis is very fact intensive in light of the wording of the decisions in Doyle and has seen cases where they talk about sort of the final determination hinging on whether the defendant's explanation is plausible, I think was the wording the court used in Doyle and has seen the way they described it was is the defendant's version of events a strong counter to the Commonwealth's evidence in this case. And my contention is that it's not. Did we take from the fact that you're focusing on the quality of the evidence, a concession that there was a Doyle violation at some point? Absolutely. Absolutely. I cringed when I read the closing argument as a prosecutor. So you're conceding that the prosecutor's closing did violate Doyle and that yes, those five words that is consciousness of guilt was a Doyle violation. And to the extent that I argue to his fair response, I think that's not a very good argument, as I reflected on it since writing that in the brief, but just wanted to be candid with the court as candid as I could be. Okay, let me hear your arguments that you're making about the wounds and the factual matters about how the actual shooting took place. Are you making that argument on the prejudice question? Is that your reason for opening up with those points? Prejudice in an armless error, yes. Okay. Well, you heard my questions to opposing counsel on the prejudice question, but a likelihood of a different result, substantial likelihood of different results. Interesting that you started out with expressing the disappointment of your boss when the results came back. It's interesting in Pennsylvania and homicide cases, a subsidiary, lesser included offense on a homicide would also be voluntary manslaughter. So likewise, Mr. Kemp may have been disappointed that he wasn't able to get a verdict of voluntary or involuntary manslaughter, because this is different versions of what happened, but it looks to me like a fight. However, the fight started, it looks to me like a fight. And one person prevailed over the other. And a different result for him would be voluntary manslaughter. And it might not sound like much, except if you're the person sitting in jail and your maximum penalty may have been only five to 10 years versus 10 to 20, that is substantial. So what's your response to the likelihood that the mere option of voluntary manslaughter could have been a different result? I don't think that would have been a substantial likelihood in the event that these comments were made during closing argument. And one of the reasons I say that, and this is certainly not determinative, but I also recall the judge commenting around sentencing time that he would have likely convicted him of first degree. So I think the fact that Mr. Kemp was convicted of third degree was a gift in light of all the evidence. In light of the fact that the victim had no weapon, there was no evidence of that. There was a size difference, the violation of duty to retreat. It was just a very bad self-defense claim from the start. And I think Mr. Kemp's non-explanation and claim memory lapse for the moment of truth, that real moment when he pulled the trigger, I think that left much to be desired for the jury. Certainly a defendant doesn't have to take the stand, but my experience has been that when they do, the jury wants a plausible alternative to the Commonwealth's theory. In this case, he presented essentially a brief blackout for a few seconds when they would have wanted to know, what were you thinking at that moment? Why did you pull the trigger? He basically says, I don't remember what happened there. And I don't think that's very compelling or a strong counterpoint. And of course, we have to put ourselves in the position of an average juror. And it's difficult, but I think that's why the language is important, the substantial likelihood versus possibility. I don't think they can overcome that standard. So would you agree that the outcome of this case is largely determined by the question of whether there was or wasn't prejudice under Strickland? I fully agree. Okay. So if you agree with that, and if that's where the panel comes out, should we decide that or should we send it back to the district court? No, I thought about this beforehand. And of course, I listened to everything that everyone said about it. I just don't see, having been through multiple evidentiary hearings, I don't see what it would accomplish given that it's a fact-driven record review type analysis for the prejudice. And although trial counsel could comment on his opinion on what he thinks the difference would have been, I'm not sure that that testimony would even be relevant. Beyond that, I don't know what trial counsel could possibly offer other than his opinion. Right. Because you've conceded that the Doyle violation, so he wouldn't be giving us an explanation about strategy or anything like that. Right. Like, why didn't I object? Would it have drawn too much attention to it? Like, I thought about saying that it wasn't a Doyle violation, but I don't think there's any sense in doing it. Like I said, I cringed when I heard it. I've got a duty to the tribunal, so. And we appreciate that very much. So your position is that we should excuse the procedural default and go to prejudice, or not even have to wrestle with procedural default and simply rule on prejudice grounds. That would be what you're asking this panel to do? Yes, Your Honor. Judge Mady, any further questions for counsel? No. Judge Fischer? I have no other questions. Thank you. All right. Mr. Wade, thank you. And we do appreciate your hander with the report. And we'll see if your adversary has any other comments in rebuttal. Thank you, Your Honor. Just really quickly, just to reiterate, as the court is obviously aware, you know, there was evidence in this case that could go either way. But there was evidence that suggests that, you know, this was self-defense. There was evidence that suggested otherwise. And in a situation like that, Mr. Kemp's own testimony is certainly important. And maybe for his purposes, critical to his defense. And in that situation where his decisions to remain silent were being used against him, I appreciate Mr. Wade's candor that he agrees it's a Doyle violation. But I think that the impact of that, the impact of the jury hearing that, you know, as he said, they want a plausible alternative. The impact of them hearing that his decision to remain silent, his consciousness of his guilt, I think just it's incredibly impactful. And I don't think that can be overstated. Mr. Barrio, one question I would have for you. I didn't see this in the record. I raised this point about voluntary manslaughter, but I didn't see it in the record. Do you know from the record, does the record show whether or not trial counsel argued that this was a voluntary or involuntary manslaughter case? To be honest, I don't recall, Your Honor. I could certainly look into that and follow up with a letter brief if you would like. But to be honest, sitting here right now, I don't recall. I don't know that we have that part of the record. We have, we get whatever the state courts send to us on these habeas cases. Sometimes we don't get the entire entire record. I haven't heard that. I would like to apologize. It occurred to me during Mr. Waite's argument that I failed to put my coat on and I'm horrified by that. And I certainly mean no disrespect. I think it's a consequence of sitting here in my office. And I just, I want to apologize. I was absolutely horrified when I realized I'm sitting here without my coat on. So I just wanted to apologize for that. When we have you in person, we want to see you impeccably dressed. How about that? Absolutely. The first notation I made here on the minutes was no coat. So thank you for the apology. It's curious. I've been asking around in, particularly in state courts. Maybe Mr. Waite has an answer. I wonder whether counsel have tried to enter state courts in recent times, uh, either without a tie or without a coat since everybody's become more casual, uh, across the country in the world. You seen that Mr. Wade? Yeah, I'm seeing a lot of khaki pants with blue blazers as a substitute, which I don't approve of. Um, either does Judge that's in our courthouse. That's still completely unacceptable unless you're, you know, unless you're in your office. But if you're in court, you better have a suit and tie. Okay. Well, we thank counsel for their, uh, helpful, uh, arguments and discussion with us today and their, their briefing. The court will take the matter under advisement. Um, and we look forward to seeing both of you in person in the next place.